ROOKER ET AL. v. FIDELITY TRUST COMPANY.

[No. 22,658. Filed October 5, 1915. Rehearing denied June 28, 1916.]

1. APPEAL.—*Vacation Appeal.*—*Parties.*—Where a vacation appeal is taken from a judgment *in rem* rendered on issues involving the construction of trust deeds and does not question personal judgments which determined only certain matters of costs, those interested only in the judgments for costs are not necessary parties to the appeal. p. 183.

2. MORTGAGES.—*Parol Evidence.*—*Admissibility.*—While the rule that the terms of a written instrument cannot be varied or contradicted by parol or extrinsic evidence is subject to the exception that a deed absolute on its face, may, in equity, be shown by parol evidence to have been intended to have the effect of a mortgage, yet this exception does not apply where the deed alleged to be a mortgage is but one element in a transaction which has been reduced to writing in its entirety and is evidenced by a memorandum embodying all of its terms. p. 184.

3. MORTGAGES.—*Deed of Trust.*—*Foreclosure.*—Where lands were conveyed by warranty deeds under an agreement providing, for the advancement of money to pay for improvements on the land and to maintain the property until it could be disposed of, at which time the surplus, if any, should go to the grantor, the conveyance, under the terms of the agreement, constituted an absolute trust and not a mortgage, in the absence of a condition of defeasance providing for a reconveyance to the grantor, and there could not, therefore, be a foreclosure. p. 184.

From Hamilton Circuit Court; *James M. Purvis*, Special Judge.

Action by Dora E. Rooker and others against the Fidelity Trust Company, which filed a counterclaim, and others. From a judgment for the Fidelity Trust Company, plaintiffs appeal. *Reversed.*

*William V. Rooker*, for appellants.

*Henry Seyfried* and *Smith, Remster, Hornbrook & Smith*, for appellee.

SPENCER, C. J.,—On October 11, 1909, appellants, Dora E. Rooker and William V. Rooker, as first parties, and the appellee, Fidelity Trust Com-

pany, as second party, entered into a certain trust contract and executed as evidence of such contract the following memorandum in writing, omitting the formal parts:

"WITNESSETH:

"Paragraph 1. That concurrently herewith and as a part of the contract evidenced by this memorandum, the said first parties have this day by their certain written instruments in the form of a general warranty deed conveyed to second party as trustee, ever upon the conditions and trust and upon the powers and for the uses and purposes herein more particularly set forth, the following real estate in Marion County, in the State of Indiana, to-wit:—(Here follows description of same.)

"Also the following real estate in Hamilton County, in the State of Indiana, to-wit:—(Here follows description of same.)

"That reference is hereby made to the said warranty deeds and to the several descriptions therein for greater certainty.

"Paragraph 2. That said warranty deed is made ever upon the conditions and trust and upon the powers and for the uses and purposes herein more particularly set forth, that is to say:

"Whereas the said Dora E. Rooker, the grantor in said deed and first party herein is the owner in her own and separate right and estate of the said above described lands situate in said Hamilton County and the said Dora E. Rooker and William V. Rooker, her husband, grantors in said deed and parties of the first part are the owners as tenants by the entireties of said real estate situate in said Marion County; and

"Whereas the said Dora E. Rooker in and about the improvement of her said real estate in Hamilton County, Indiana, has heretofore undertaken to erect and construct a dwelling

house and out buildings appurtenant thereto and other necessary and proper structures and to equip the same 'with modern utilities and conveniences and in so doing has been obliged to lay out and expend large sums of money and has been obliged to incur obligations beyond her reasonable expectations and beyond her present means to pay, and

"Whereas, the said improvements have been carried so far toward completion as that they cannot now be abandoned or the work thereon stopped or delayed without great sacrifice and loss to the said Dora E. Rooker and without great injury to her estate, and

"Whereas, it requires Six Thousand ($6,000) Dollars to complete said improvements and to pay off indebtedness of said Dora E. Rooker incurred by her arising out of the making of the said improvements and in the completion and installation thereof, and said Dora E. Rooker represents that all such indebtedness was incurred by her for her own benefit arising out of the making of said improvements.

"Now, therefore, it is agreed that the said Fidelity Trust Company, second party herein, shall and it does hereby accept the title of, in and to said real estate ever upon the conditions and trust and upon the powers and for the uses and purposes following, that is to say:—

"Clause A. The Fidelity Trust Company shall pay and it does hereby agree to pay from time to time upon the written order and directions of said Dora E. Rooker not exceeding the sum of Six Thousand ($6,000.00) Dollars for and on account of the erection and construction of said dwelling house, out buildings and improvements and the equipment and installation thereof, it being expressly understood and agreed that if a part of said indebtedness is held or may hereafter be held by banks on account of advancements made and which may hereafter be made to said Dora E. Rooker, or to the said William V. Rooker, as the undis-

closed principal of said Dora E. Rooker, it is ever understood and agreed that the written order and direction of the said Dora E. Rooker that an indebtedness be paid for her use and benefit, notwithstanding the form of said indebtedness, shall be forever binding and conclusive on all parties concerned that such debt or debts so ordered to be paid is and are in fact and in law the debts of the said Dora E. Rooker, any evidence to the contrary notwithstanding.

"Clause B. The said Fidelity Trust Company may let out and expend any such sum or sums of money other than those above specified in Clause A of this paragraph as said Trust Company may deem necessary to protect its interest in and to said real estate and to perform or better promote the performance of the trust herein and hereby created and every such advancement or payment so made shall be deemed and taken to be the debt of the said Dora E. Rooker as fully as if the same were made upon her express written direction.

"Clause C. That the said Fidelity Trust Company may obtain or cause to be obtained from any bank or banks upon the promissory note or notes of the said Dora E. Rooker any such sum or sums of money, whether within or in excess of the sum of Six Thousand ($6,000.00) Dollars as may be necessary to the true and better and complete performance of this contract and to the successful maintenance of and care for said real estate and the business thereon conducted.

"Clause D. Said Fidelity Trust Company is hereby appointed, empowered and authorized as the true and lawful attorney in fact of the first parties and in their separate deed, joint name, place, right and stead to execute a deed of general warranty conveying said real estate or any part or parts thereof upon the limitations hereinafter stated and provided.

"Paragraph 3. Said Fidelity Trust Company shall have and receive for its compensa-

tion, Trustee's fee of one Hundred and Fifty ($150.00) Dollars and a commission of two per cent on all loans and advancements and on any and all moneys laid out and expended by it to protect its interest or to promote the true and better performance of this trust, together with the interest on all such moneys at the rate of six per cent per annum, to be credited semi-annually to said Fidelity Trust Company as a debit and charge against said Dora E. Rooker, and said Fidelity Trust Company shall be entitled to have and receive the usual real estate commission on all or any part of said real estate sold by said Fidelity Trust Company pursuant to this agreement and said Fidelity Trust company shall be entitled to have and receive a brokerage fee of one-eighth (⅛) of one (1) per cent of all notes for ninety (90) days or less for moneys obtained from any bank to the credit of said Dora E. Rooker on her paper originally made.

"Paragraph 4. It is further ever understood and agreed that at any time within one year after the date of these presents said second party may execute and perform so much of the power to sell and convey as is hereinbefore granted as pertains to said Marion County real estate provided always that the sum received in consideration therefor shall be net to the credit of said Dora E. Rooker Eighteen Thousand ($18,000.00) Dollars after the payment of the commission hereinbefore mentioned. Should it so happen that said Marion County real estate be not sold within said period of one year for said sum of Eighteen Thousand ($18,-000.00) Dollars plus commission, then after ninety (90) days notice in writing to be given to first parties by second party, the said second party may publicly advertise said Marion County real estate and sell the same at whatever sum it may bring and if said Marion County real estate does not sell for lack of a bid, then second party may upon ninety (90)

days notice in writing to be given to the first parties by the second party sell and convey said Hamilton County real estate for whatever it will bring over and above the upset price of Sixty-five Thousand ($65,000.00) Dollars. If said Hamilton County real estate does not sell for said sum of Sixty-five Thousand ($65,000) Dollars for lack of a bid of that sum, then the said second party hereto may publicly advertise and sell said Marion County real estate after ninety (90) days notice given in writing to first parties by second party at public auction for whatever sum and price said real estate may bring. And if said Marion County real estate upon such sale do not fetch enough to pay the moneys and perform the obligations herein charged upon and against said real estate then said second party may proceed to sell and sell said Hamilton County real estate in the manner and form prescribed as to said Marion County real estate, after thirty (30) days notice given in writing to first parties by second party.

"It is ever understood and agreed that said Fidelity Trust Company shall apply the proceeds of any sale or sales of said real estate made pursuant to this agreement, as follows:—

"(1). To the payment of any mortgage or other valid liens, charge, adverse interest or incumbrance upon and against said real estate or any part of any of the real estate herein described, which may be prior and superior and adverse to the interest of said Fidelity Trust Company.

"(2). To the payment of moneys advanced by second party to first parties or paid to the use and benefit of first parties as herein authorized and provided.

"(3). To the payment of moneys obtained by said second party from any bank or banks to the use and benefit of said Dora E. Rooker upon her paper as hereinbefore authorized and provided.

VOL. 185—12

"(4).    The rest and residue of any money shall be paid to the said Dora E. Rooker, her heirs, executors, administrators and assigns.

"Paragraph 5.    It is further understood and agreed that any and every deed of conveyance executed by second party pursuant to the provisions of this contract shall convey to the grantee therein named an absolute and unqualified estate as fully and completely as if such deed were made by the said first parties in their own proper persons, names and rights.    And the said first parties do now hereby ratify, approve and confirm any and every such deed made by second party pursuant to this memorandum and in execution of the powers and upon the trust and confidence herein and hereby imposed.

"Paragraph 6.    In execution whereof the several parties hereto do hereby forever bind themselves, their heirs, executors and assigns."

Contemporaneously with the execution of the above memorandum and as a part of the same transaction, appellants executed to the Fidelity Trust Company, as trustee, two indentures in the form of warranty deeds, in which the real estate referred to in the above memorandum was conveyed to said trustee on certain terms and conditions.    The deed to the Hamilton county lands provided that the Trust Company should hold said real estate—

"in trust for the use and benefit of said Dora E. Rooker and to protect and discharge the obligations arising out of claims and liens or the right to liens by reason of improvements made on the above described real estate.

"Said Fidelity Trust Company of Indianapolis, Indiana, as aforesaid, to sell and convey said lands or any part of them at such prices and upon such terms as may be from time to time dictated in writing by said Dora E. Rooker; to execute the proper Trustee's deed or deeds con-

veying the title thereto in fee simple to the purchaser; it being hereby understood and agreed that any deed so executed by said Fidelity Trust Company of Indianapolis, shall convey a good and indefeasible title in fee simple to such purchaser or purchasers as fully as this grantor could herself do, and any such purchaser or purchasers shall in no wise be responsible for the application of the proceeds arising from such sale in the hands of said Fidelity Trust Company of Indianapolis, Indiana.

"And said Fidelity Trust Company of Indianapolis, as such Trustee, shall have full power and authority to make contracts in writing for the sale of the foregoing real estate, or any part or all of said real estate and convey same free and clear of any incumbrance or convey the same subject to any existing incumbrances, and to do any and all acts and to execute any and all papers which may be necessary to protect the interests of this grantor, the mortgagee and other lien holders in and to said real estate and to conserve the trust hereby created.

"And in the event any such liens or charges against said real estate be paid by the Fidelity Trust Company, Trustee, the said Fidelity Trust Company, Trustee, shall be subrogated to all the rights of such original lien holders and the same shall be enforceable by it and collectible with interest at the rate of 6% per annum, to be credited semiannually as a debt and charge against said real estate."

The deed to the Marion county lands provided that the trust company should hold said real estate "in trust for the use and benefit of said grantors, William V. Rooker and Dora E. Rooker, and to protect and discharge the obligations of the trust herein with the powers and limitations as follows:

"Said Fidelity Trust Company of Indianapolis, Trustee as aforesaid, to sell and convey

said real estate according to the terms of a certain contract of even date herewith within one (1) year after the date of these presents for a consideration fixed in said contract, and should it so happen that said real estate be not sold within said period of one (1) year, for the sum nominated in said contract, then after ninety days notice in writing, to be given to the grantors by the Trustee herein, the Trustee may publicly advertise said real estate and sell same at public or private sale at such price as it may bring and upon the consummation of such sale as may be made by said Fidelity Trust Company of Indianapolis as such Trustee, to execute the proper Trustee's deed conveying the title thereto in fee simple to its said purchasers. It being hereby understood and agreed that any deed so executed by said Fidelity Trust Company of Indianapolis, Trustee, shall convey a good and indefeasible title in fee simple to such purchaser or purchasers as fully as these grantors could themselves do, and any such purchaser or purchasers shall in nowise be responsible for the applications of the proceeds arising from such sale in the hands of the said Fidelity Trust Company of Indianapolis, Trustee, but said Fidelity Trust Company is directed to apply the proceeds arising from such sale in the manner and for the purposes set out in the contract entered into between said grantors and said Fidelity Trust Company, Trustee, on this date.

"The said Fidelity Trust Company of Indianapolis as such Trustee shall have full power and authority to make contracts in writing for the sale of the foregoing real estate or any part or all of said real estate and convey the same free and clear of any incumbrance or subject to any existing incumbrances, and to do any and all acts and to execute any and all papers which may be necessary to protect the interest of the grantors in and to said real estate and to conserve the trust hereby created and it is here-

by further understood and agreed that if the said Fidelity Trust Company of Indianapolis, as Trustee, shall elect to pay any lien, charge or incumbrance existing against said real estate, the said Fidelity Trust Company of Indianapolis, Trustee, shall be subrogated to all the rights, title and interest held by the original parties thus paid and the same shall be collectible and enforceable in its hands, together with interest thereon at the rate of 6% per annum, to be credited semiannually to said Fidelity Trust Company as a debit and charge against the grantors and the real estate above described."

Each conveyance was made subject to unpaid taxes and to certain described mortgages.

On October 30, 1912, appellants brought an action in the Marion Circuit Court against appellee, in which they charged a violation of the trust agreement, and asked for an accounting and for the appointment of a receiver to carry out the trust embodied in said contract. Later the cause was venued to the Hamilton Circuit Court, where appellants filed an amended complaint in which the firm of Lilly & Stalnaker, the Illinois Surety Company, the Balke & Krause Company, and one Daniel I. Neher were joined as party defendants to answer as to their respective interests in the premises, if any. Of these defendants, Lilly & Stalnaker and the Illinois Surety Company filed disclaimers, and Neher was subsequently defaulted, while the interest of the Balke & Krause Company, represented by a judgment against the Hamilton county real estate, was found on final hearing to have been assigned to appellee, and said judgment was merged in the judgment in this cause.

Appellee entered a general denial to the amended complaint and also filed an amended counter-

claim, denominated a cross-complaint, in which it alleged the payment of large sums of money by it in accordance with the terms of the trust agreement and for the protection of its rights thereunder. It further charged waste on the part of appellants, and asked that an accounting be had; that the deeds above described be declared a mortgage and foreclosed; and that a receiver be appointed to take charge of the property during the year of redemption. We deem it unnecessary to make extended reference to the several motions addressed by appellants to this pleading, nor to the ten paragraphs of special and partial answer filed thereto. It is sufficient to say, in general: (1) That they present appellants' theory that the instruments above set out constitute a trust agreement which, it is charged, has been violated and abused in the particulars set forth; and (2) that they oppose the position taken by appellee that the conveyances, while in the form of trust deeds, in fact constitute a mortgage which was executed to appellee as security for the repayment of advancements made by it. The issues were closed by an answer in general denial to the counterclaim and by a reply in denial to the several paragraphs of special and partial answer filed by appellants. The cause was tried by the court which, at the request of appellants, made a special finding of facts and also a general finding in which it found against appellants on the issues presented by their amended complaint and in favor of appellee on the issues joined on its amended counterclaim.

The court thereupon rendered judgment, foreclosing the mortgage and directing a sale of the property in question, and at the same time rendered personal judgments, which determined the matter of costs as between the Illinois Surety Company, Lilly & Stalnaker, Daniel I. Neher and appellants.

None of the parties last above mentioned, other than appellants, are now before this court, and as this is a vacation appeal, appellee insists that it should be dismissed without an inquiry into the merits for the reason that all of the parties to the judgment below are not named in the assignment of errors in this court. This appeal, however, is from the judgment *in rem* rendered on the issues which involve the construction of the instruments herein set out and does not question the personal judgments which determined only certain matters of costs. No parties, other than appellants and appellee, are affected by the judgment from which this appeal is prosecuted, and they are the only necessary parties to this proceeding. *Zimmerman* v. *Gaumer* (1898), 152 Ind. 552, 554, 53 N. E. 829; *Lowe* v. *Turpie* (1896), 147 Ind. 652, 692, 44 N. E. 25, 47 N. E. 150, 37 L. R. A. 233.

The principal question to be determined here is the proper construction to be given to the instruments which are made the basis of this action. In support of its contention that the deeds in question in fact constitute a mortgage, appellee relies on the following propositions of law:

(1) That different instruments, executed at the same time, relating to the same matter, constitute one transaction and must be read and construed together. *Knepper* v. *Eggiman* (1911), 177 Ind. 56, 62, 97 N. E. 161; *Schmueckle* v. *Waters* (1890), 125 Ind. 265, 267, 25 N. E. 281.

(2) That any conveyance of real estate, whatever its form, which is in fact executed for the purpose of securing a debt, is a mortgage. *Sinclair* v. *Gunzenhauser* (1912), 179 Ind. 78, 121, 98 N. E. 37, 100 N. E. 376; *Brown* v. *Follette* (1900), 155 Ind. 317, 321, 58 N. E. 197; *Lowe* v. *Turpie, supra.*

(3) That the power of sale contained in the in-

struments here involved does not exclude the right of foreclosure by judicial proceeding. *Sinclair* v. *Gunzenhauser, supra; Eaton, etc., R. Co.* v. *Hunt* (1863), 20 Ind. 457, 464; §4029 Burns 1914, §2986 R. S. 1881.

There can be no doubt that the general rule which precludes the admission of parol or extrinsic evidence to vary or contradict the terms of a written instrument is subject to the exception that a deed absolute on its face may, in equity, be shown by parol evidence to have been intended to have the effect of a mortgage merely. This exception has found frequent expression in the decisions of this and the Appellate Court, and its existence as an established rule in Indiana is conceded by appellants. It is their contention, however, that it has no application where, as in this case, the deed or other instrument of conveyance is but one element in a transaction which has been reduced to writing in its entirety and is evidenced by a memorandum embodying all of its terms. This position is well taken. As recently stated by this court, where "there is a formal written contract which appears to be complete within itself, it will be presumed to be the repository of the final intentions of the parties in regard to the subject matter of the agreement. Oral declarations relative thereto will be disregarded and the rights of the parties determined as they appear from the written instrument." *Strebel* v. *Bligh* (decided this term), 109 N. E. 45.

The instruments now before us embody but one contract, the terms of which are stated in the memorandum above set out, and the legal force and effect of the trust deeds, as they are termed, depend on the intention of the parties as it is evidenced by said memorandum. From the terms of this instrument, there can be no

doubt that it was one purpose of appellants to provide therein for the repayment to appellee of such sum or sums as it should advance to them or expend in their behalf. To that extent the instruments may be construed as affording security to appellee for money advanced, but not every instrument which affords security is a mortgage, nor is it the primary or sole purpose of the contract in this case to insure the payment of appellee's claim and no others. Appellants were the owners of a considerable amount of real estate, on a part of which certain improvements were contemplated and were in fact under course of construction. The expense of these improvements proved greater than was anticipated and the claims of creditors were being pressed. It became evident that, to prevent great sacrifice or loss to the estate, provision had to be made for the completion of the work in hand, for the proper maintenance of the property until disposed of and for the payment of debts owing by appellants. To that end the agreement evidenced by the instruments here in suit was entered into and all parties thereto obligated themselves, their representatives and assigns to the proper performance of its terms. The evident purpose of its execution and the language used by the parties make it clear that at the time it was entered into the agreement was treated as a trust contract and not as a mortgage.

Reference may here be made to the cases of *Taylor* v. *Cornelius* (1869), 60 Pa. St. 187 and *Woodruff* v. *Robb* (1850), 19 Ohio 212, to which our attention is called by appellee as decisive of the questions here presented. Without reviewing these decisions at length, it may be noted that in each case the instrument in suit contained a condition of defeasance which provided, in substance, that on the payment

of certain debts the property, or so much as remained thereof, should be reconveyed to the grantor in the trust deed. In the case at bar, no provision is made for the reconveyance to appellants of the real estate involved or any part thereof. The fair construction of the instruments before us is that of an effort on the part of appellants to provide for the conversion of their property into money in order that their just debts might be paid. As such it is a contract governed by the law of trusts. True, provision is made for the advancement of certain sums of money by appellee to appellants or on their order, but it is apparent that the advancements so made do not supply the entire consideration for the execution of the contract and they are to be included among other debts to be paid out of the funds realized from the sale of the lands in question. If, by reason of the improvements contemplated or other circumstances, the proceeds realized from the sale of said lands be more than sufficient to pay all obligations, then the residue of such proceeds is to go to appellant Dora E. Rooker, her heirs and assigns. To that extent they may be said to possess an equitable interest in the estate and their position with reference thereto is somewhat analagous to that of other creditors, but nowhere in the instruments of conveyance is there a contingency expressed or implied, on the happening of which appellants, or either of them, would be entitled to a reconveyance of any part of said lands.

The distinction between an absolute deed of trust and a deed of trust in the nature of a mortgage is clearly stated in *Hoffman, Burneston & Co.* v. *Mackall* (1855), 5 Ohio St. 124, 64 Am. Dec. 637, and the decision reached in that case supports our construction of the instruments here in controversy. We quote from the opinion (p. 130) as follows:

"There is a manifest and well settled distinction between an *unconditional deed of trust*, and a *mortgage* or *deed of trust in the nature of a mortgage*. The former is an *absolute* and *indefeasible* conveyance of the subject matter thereof, for the purpose expressed; whereas the latter is *conditional* and *defeasible*. A mortgage is the conveyance of an estate, or pledge of property, as security for the payment of money, or the performance of some other act, and conditioned to become void upon such payment or performance. A deed of trust *in the nature of a mortgage*, is a conveyance in trust *by way of security*, subject to a condition of defeasance, or redeemable at any time before the sale of the property. A deed conveying land to a trustee as mere collateral *security* for the payment of a debt, with the condition that it shall become void on the payment of the debt when due, and with power to the trustee to sell the land and pay the debt in case of default on the part of the debtor, is a *deed of trust in the nature of a mortgage*. By an absolute deed of trust, the grantor parts *absolutely* with the title, which rests in the grantee unconditionally, for the purpose of the trust. The latter is a conveyance to a trustee for the purpose of *raising a fund to pay debts;* while the former is a conveyance in trust for the purpose of *securing a debt*, subject to a condition of defeasance." The court concludes in language applicable here that it "is manifest from this distinction that the conveyance in controversy, in this case, was not a mortgage, or deed of trust in the nature of a mortgage, but an absolute deed of trust."

The judgment of the trial court in the case at bar is contrary to law and must be set aside. Judgment reversed, with instructions to sustain appellants' separate and several motions for a new

trial, and for further proceedings in accordance with this opinion.

NOTE.—Reported in 109 N. E. 766. When a deed, absolute in form, will be construed as a mortgage, 129 Am. St. 1137. See under (3) 27 Cyc 974.